IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-72

_____

FILED

**April 10, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

MISSION COAL WIND DOWN CO., LLC,
and GILBERT NATHAN, as PLAN ADMINISTRATOR,
Petitioners,

v.

DIRECTOR, DIVISION OF MINING AND RECLAMATION,
WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,
Respondent.

_____

Appeal from the West Virginia Surface Mine Board

Chairman Mark G. Schuerger

Appeal No. 22-08-SMB

VACATED AND REMANDED

_____

Submitted: February 6, 2024

Filed: April 10, 2024

Christopher M. Hunter, Esq.
Jackson Kelly, PLLC
Charleston, West Virginia
Counsel for Petitioner

Jeffrey O. Dye, Esq.
West Virginia Dept. of Environmental
Protection, Office of Legal Services
Charleston, West Virginia
Counsel for Respondent

Kevin W. Barrett, Esq.
Bailey & Glasser LLP
Charleston, West Virginia
Counsel for Respondent

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, Judge:

Plan Administrator Gilbert Nathan and Mission Coal Wind Down Co., LLC (collectively "Petitioners"), appeal the January 23, 2023, Final Order of the West Virginia Surface Mine Board ("Board") affirming the Director of the Division of Mining and Reclamation's ("DMR") Decision and Order for Compliance which ordered Gilbert Nathan to be listed as an owner and controller of Pinnacle Mining Company, LLC ("Pinnacle") and Seminole West Virginia Mining Complex, LLC ("Seminole") and required him to update the ownership and control information for both permit holders, and by doing so placed Mr. Nathan on the Applicant Violator System ("AVS").

Having reviewed this matter, we conclude that the Board failed to conduct a proper analysis of whether Mr. Nathan was a "controller" under West Virginia Code of State Rules § 38-2-2.83.d (2020) and *West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 200 W. Va. 734, 490 S.E.2d 823 (1997). Accordingly, we vacate the January 23, 2023, Final Order and remand this matter to the Board for further proceedings consistent with this opinion.

## Background

In October of 2018, Mission Coal Company, LLC ("Mission Coal") and its affiliates filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the

2

Northern District of Alabama.[1] Mission Coal continued to manage and operate their coal mines, including Pinnacle and Seminole, as Debtors-in-Possession. On April 15, 2019, Gilbert Nathan was approved by the bankruptcy court as the Plan Administrator. Pursuant to the bankruptcy court's *Confirmation Order* (the "Bankruptcy Plan"), Mr. Nathan would act as the sole officer, director, and manager of Mission Coal to wind down its business.

On April 30, 2019, Bluestone Resources, Inc. and Bluestone Oil Corp. (collectively "Bluestone") entered into an "Asset Purchase Agreement" and "Contract Operator Agreement" with Petitioner. Under the terms of the Operator Agreement, Bluestone was to become the permittee of the various mining permits (including associated water discharge and air emission permits) issued by the West Virginia Department of Environmental Protection ("DEP") for the Pinnacle Mining Complex. Bluestone was also to assume Petitioner's obligations such as reclamation, remediation, cleanup at the Pinnacle Mine Complex and was to be responsible for liabilities, costs, and obligations associated with the permits and mining activities while Bluestone operated the Pinnacle Mine Complex. Bluestone applied to DEP for a transfer of mining permits, but the transfers were not approved due to unpaid civil penalties and unabated violations levied by DEP against Bluestone's other mines.[2]

---

[1] Mission Coal Company, LLC reorganized and became Mission Coal Wind Down Co., LLC.

[2] Bluestone's transfer efforts have been ongoing for nearly three and a half years.

While actively mining and removing coal from the Pinnacle Mine Complex, Bluestone's operations resulted in fines and penalties for numerous violations that have been levied against the Petitioners. DMR entered Mr. Nathan personally in the AVS database. On June 17, 2022, Petitioners asked the DMR to remove the fines and violation notices against them and reissue those fines and violations against Bluestone as operator of the Pinnacle Mine Complex. Mr. Nathan explained that he was acting as Plan Administrator for Mission Coal Wind Down Co., LLC. Mr. Nathan asserted that the reorganized debtor was a different entity from Mission Coal Company, LLC and his only role was to implement the provisions of the Bankruptcy Plan which provided for the sale of surface rights of Pinnacle to Bluestone and the subsurface rights to Contura Energy, Inc. ("Contura"). Conversely, Bluestone was obligated to have the Pinnacle permits transferred to it and had assumed the duty to comply with the permits during the interim. Further, Bluestone was to indemnify the Petitioner for any of the alleged violations. Finally, Mr. Nathan objected to being personally named in the AVS database of permit blocked entities, as he was not acting in his personal capacity related to any Mission Coal entity.

On August 1, 2022, DMR issued a *Director's Decision and Order for Compliance* denying Petitioners' request and ordering that Mr. Nathan be listed as "an owner or controller of Pinnacle Mining Company and Seminole West Virginia Mining Complex" and requiring that he update the ownership and control information for both permit holders. DMR explained that the reorganized debtor, the Plan Administrator, and the directors of Pinnacle, collectively continued to be responsible for the mining permits

4

until such were transferred to Bluestone. As the Plan Administrator, Mr. Nathan was listed on the "permit-block" list due to the violations at Pinnacle Mine Complex pursuant to the federal Surface Mining Control and Reclamation Act ("SMCRA"). This prevented Mr. Nathan, personally, from obtaining new permits nationwide until the violations were abated.[3] Petitioners appealed DMR Director's August 1, 2022, *Decision and Order for Compliance* to the Board.

On October 19, 2022, the Board held an evidentiary hearing. At that hearing, Petitioners alleged that DMR was incorrect in finding that Mr. Nathan was a controller of Pinnacle, as that conclusion was not supported by the evidence, was unreasonable, inequitable, and not in accordance with the West Virginia surface mining law.[4] The goal of the Bankruptcy Plan was to liquidate the company so that a reorganized entity would emerge from bankruptcy with virtually no assets. Mr. Nathan testified that the Pinnacle assets were sold and split between Contura and Bluestone. Petitioners alleged that in 2019, DEP gave "advanced approval" to Bluestone to operate the Pinnacle Mine and that subsequently, Bluestone took over the Pinnacle assets and applied for the permit transfers.[5]

---

[3] Mr. Nathan was on the board of directors for another coal company that was applying for a mining permit in another state. When authorities in the other state ran a check, Mr. Nathan's status as permit-blocked was noted and he resigned from the board so as not to affect the status of the other coal company.

[4] We note that Mr. Nathan did not appeal the Director's decision regarding his control of Seminole.

[5] Bluestone applied for a transfer of permits, but because it was permit-blocked due to violations at other sites, a transfer could not occur.

Mr. Nathan asserted that he was never affiliated with Pinnacle prior to its reorganization and that the wind down entities he administered did not have the real or personal property associated with the facility. Bluestone incurred violations at the Pinnacle Mining Complex during its operations there and as such should be considered the controller. Further, Mr. Nathan argued that it was DEP that allowed Bluestone to operate the Pinnacle permits under "advanced approval." Mr. Nathan asked the Board to order DEP to update the system and remove the link that connects him to Pinnacle so that he would no longer be permit-blocked or associated with the violations on the AVS as Plan Administrator.

At the hearing, DEP asserted that the entities that Mr. Nathan controls are the same as those that held the permits before, during, and after bankruptcy. Citing the Bankruptcy Plan, DEP noted that the reorganizing entities became a "reorganized debtor" upon entry of the order and that the reorganized debtors (including Pinnacle) merely lawfully changed names. Further, DEP asserted that, regardless, as Plan Administrator, Mr. Nathan was now "in control" of the permit holding entity at issue—Pinnacle. DEP further alleged that the surface mining laws allowed a corporate permit holder (an operator under a permit, such as Bluestone) to hold a permit without designating a person as responsible for the permittee's actions. DEP argued that, in effect, Mr. Nathan was asking for a corporate permittee to "de-designate" a responsible officer when a responsible officer is needed to act on behalf of the permittee during bankruptcy.

According to DEP, Mr. Nathan repeatedly acted on behalf of Pinnacle and directed the method and manner of mining under the permits through Bluestone, who Mr. Nathan had contracted with to continue mining operations. DEP asked the Board not to exempt Mr. Nathan from the requirements that accompany being in control of a permitted entity, as mining regulations impose responsibility and liability upon a permitted entity's corporate officers. DEP noted that the purpose of these permit-blocking provisions is to prevent corporate officers of noncompliant entities from obtaining a permit through another entity; thus, an operator may not hide behind a corporate shell to prevent DEP from enforcing the permit terms and legal requirements. Here, the Federal Office of Surface Mining considered Mr. Nathan as exercising "ownership and control" and advised DEP to consider placing one of the entities controlled by Mr. Nathan into the AVS. If a restructuring officer, like Mr. Nathan, is exempted from being entered into the AVS, DEP argued it will create a bankruptcy exception to the surface mining laws.

DEP further highlighted that Mr. Nathan had not taken affirmative actions against Bluestone to enforce its agreements mandating regulatory compliance until he was placed into the system. After being added to AVS, Mr. Nathan asked the bankruptcy court to compel Bluestone to meet its obligations. DEP asserted that Mr. Nathan is the only person with authority to act on behalf of Mission Coal and the only person DEP can call upon to enforce permit compliance so long as he is not exempted. Lastly, DEP pointed out that it did not apply the presumption in West Virginia Code of State Rules § 38-2-2.83 (2020). Instead, the director found that, as a matter of fact, Mr. Nathan had a relationship

7

that gave him the authority to determine the method and manner of mining. Additionally, DEP contended that subsection 2.83(d) was an alternative basis that supported the director's decision.

On January 23, 2023, the Board affirmed the *Director's Decision and Order for Compliance*. The Board determined that Petitioner's sale of assets to Bluestone did not result in an immediate transfer of the mining permits and the Bankruptcy Plan contemplated and provided for an extended process for the permit transfer to take place; while the sale and permit process proceeded, the Bankruptcy Plan provided for the continued existence of the debtors. Further, the bankruptcy court provided that, pending the transfer of the permits, the reorganized debtors had to comply with the environmental laws in any ongoing operations under the permits. The Asset Purchase Agreement between Bluestone and the Petitioner provided that Bluestone would assume all liabilities related to the Pinnacle Mining Complex. However, the agreement was only between the Petitioner and Bluestone, and neither DMR nor DEP were parties to that agreement. Mr. Nathan acknowledged that it was his job to ensure compliance with the permit prior to their transfer to Bluestone. The Bankruptcy Plan provided that the acting managers and officers of the debtors were deemed to have resigned and the Plan Administrator was to be appointed as the "sole manager and sole officer of the Debtors" and would succeed the powers of the former managers, directors, and officers of the debtors. The Board also found that Bluestone was to use reasonable efforts to have the permits transferred to it (or replace

8

them), and yet it still had not filed certain applications for permits that were identified in the sales agreement; thus, the Pinnacle permits remained in Petitioner's name.

Pursuant to the Contract Operator Agreement, Bluestone has the right to utilize and operate its complex under the existing permits prior to the transfer or replacement of the permits and Bluestone was to be responsible for all liabilities related to the permits including reclamation and remediation of violations. However, the Board found that the Petitioners retained the right to appeal any notice of violation and the right of remediation at Bluestone's expense; therefore, the Board found that Mr. Nathan remained in control of the Pinnacle Mining Complex and was appropriately registered into the AVS database. Petitioners now appeal the Board's order.

**Standard of Review**

The parameters of our appellate review are set forth in West Virginia Code § 29A-5-4(g) (2021), in part, as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedures;

9

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In reviewing decisions by administrative agencies, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E. 2d 916, 921 (W. Va. Ct. App. 2022) (citing Syl Pt. 3, *In Re Queen*, 196 W. Va. 442, 473 S.E. 2d 483 (1996)). With these standards in mind, we consider the issue raised on appeal.

**Discussion**

On appeal, Petitioner alleges three assignments of error. First, that the Board erred in finding that Mr. Nathan has a relationship granting him actual authority to control the manner in which Bluestone operates the Pinnacle Mining Complex. Second, that the Board erred in finding that Mr. Nathan is a controller of the permittee, Pinnacle Mining Company, LLC. Lastly, that the Board erred in affirming DEP's arbitrary and capricious application of the West Virginia Surface Coal Mining and Reclamation Act's ("WVSCMRA") permit-blocking provisions because DEP's capricious enforcement has undermined the policy behind the permit-blocking provisions and the applicant violator system. After a review of the record and the applicable law, we find the Board's analysis to be incorrect. The Board failed to conduct a proper analysis as to whether Mr. Nathan,

10

the Plan Administrator, was "in control" of a permitted entity pursuant to West Virginia Code of State Rules § 38-2-2.83.d and *West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 200 W. Va. 734, 490 S.E.2d 823 (1997). Because this conclusion requires remand, we decline to address the remainder of Petitioner's assignments of error.[6]

Petitioner's first assignment of error contends that the Board erred in assessing Mr. Nathan's degree of control over the surface mining operations. The WVSCMRA and accompanying DMR regulations provide guidance on this point. West Virginia Code § 22-3-3(o) (2001) defines "operator" as "any person who is granted or who should obtain a permit to engage in any activity covered by this article . . . and includes any person who engages in surface mining . . . [or] reclamation operations, or both . . . ." West Virginia Code of State Rules § 38-2-2.83 provides that "Owned or Controlled and Owns or Controls means any one or a combination of the relationships specified in subdivisions 85.a through d of this subsection: 2.83.a. Being a permittee of a surface coal mining operation[.]" West Virginia Code of State Rules § 38-2-2.83.c further provides that "control" is defined as "[h]aving any . . . relationship which gives one person authority directly or indirectly to determine the manner in which an applicant, an operator, or other entity conducts surface mining operations." Finally, West Virginia Code of State Rules § 38-2-2.83.d. creates a presumption of control in certain circumstances:

---

[6] *See City of Charles Town v. Jefferson Cnty. Comm'n*, No. 19-0412, 2020 WL 6058717, at *2 n.7 (W. Va. Oct. 14, 2020) (memorandum decision).

The following relationships are presumed to constitute ownership or control unless a person can demonstrate that the person subject to the presumption does not in fact have the authority directly or indirectly to determine the manner in which the relevant surface mining operation is conducted:

**2.83.d.1. Being an officer or director of an entity;**

2.83.d.2. Being the operator of a surface mining operation;

2.83.d.3. Having the ability to commit the financial or real property assets or working resources of an entity;

2.83.d.4. Being a general partner in a partnership;

2.83.d.5. Based on the instruments of ownership or the voting securities of a corporate entity, owning of record ten (10) through fifty (50) percent of the entity; or

2.83.d.6. Owning or controlling coal to be mined by another person under a lease, sublease or other contract and having the right to receive such coal after mining or having authority to determine the manner in which that person or another person conducts a surface mining operation.

(Emphasis added).

In West Virginia, permittees are considered "controllers" of the operations for which they hold permits; and it is undisputed that Pinnacle Mining Company was the permittee. DEP was clearly authorized to place Pinnacle into the AVS. *See* West Virginia Code of State Rules § 38-2-2.83.a. However, DEP asserts that an *individual* must be held responsible in the AVS to properly effectuate the intent behind such system. We disagree. There is no authority, in statute or common law, which requires directors and officers to be specifically referenced and registered in the AVS. DEP, and the Board, both maintain that it is necessary for a specific person to be blocked from permit applications. However, the

Board has failed to properly analyze the relationship of Mr. Nathan, as an officer of Pinnacle Mining Company, and the control of the relevant mining operations under *Kingwood.* Further, DEP failed to discuss why an officer was chosen to be listed in leu of Bluestone, or the listed permittee, Pinnacle Mining Company.

It is uncontested that Mr. Nathan, as Plan Administrator, acted as the sole officer, director, and manager of Mission Coal. In turn, Mr. Nathan was the only officer in charge of the subsidiary, Pinnacle Mining Company, the actual permittee to the mining operations at issue. To pursue an action holding a permittee's officer personally liable for violations under the permit blocking scheme, the DEP and Board must use the rebuttable presumption of control established by West Virginia Code of State Rules § 38-2-2.83.d.1. Pursuant to this provision, Mr. Nathan is presumed to be a controller unless he can demonstrate that he does not in fact have the authority directly or indirectly to determine the manner in which Bluestone's surface mining operation is being conducted at the time of the violations. The Board failed to properly analyze this relationship under the appropriate authority for a determination of control.

On this point, we find *West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 200 W. Va. 734, 490 S.E.2d 823 (1997), instructive. In *Kingwood*, Kingwood Coal Company ("Kingwood") leased its coal reserves to T&T Fuels ("T&T") to conduct underground mining. *See id.* at 737, 490 S.E.2d at 826. Kingwood also entered into a coal supply agreement with T&T under which Kingwood agreed to purchase coal

13

mined by T&T. *See id.* This was considered a standard contract mining arrangement which created a rebuttable presumption of control pursuant to West Virginia Code of State Rules § 38-2-2.83.d. *See id.* at 737–38, 490 S.E.2d at 826–27. In 1994, a blowout occurred, and millions of gallons of acid mine drainage entered the Cheat River. *See id.* at 737, 490 S.E.2d at 826. In 1995, DEP issued a final agency decision concluding that, due to Kingwood's authority to determine the manner in which underground mining operations were conducted by T&T, the listed permittee, Kingwood would be considered the operator in control and thus permit-blocked. *See id.* at 739–40, 490 S.E.2d at 828–29. DEP's finding of control was based upon communications from Kingwood to T&T during mining regarding which sections should be mined to obtain the best coal in furtherance of their supply agreement and marketability. *See id.* Kingwood appealed DEP's decision to the Board, which reversed DEP's finding of control. *See id.* at 740, 490 S.E.2d at 829. The Board held that, although Kingwood owned the coal reserves being mined by T&T and had certain contractual rights pursuant to its lease agreement, "Kingwood had no unilateral right sufficient to force T&T to accede to Kingwood's wishes." *Id.* at 742, 490 S.E.2d at 831. In affirming the Board's opinion, the Supreme Court listed factors relevant to the question of control:

> Important factors to be considered in determining the actual relationship of the parties include whether the mining company is free to sell the coal it extracts to whenever it wishes and the degree of involvement of the coal owner or lessor in the mining operation. Information which can be used to rebut a presumption of control can include, but is not limited to, data on who provides engineering services, who determines the placement and method of driving entries or making cuts, and to whom the coal may be sold and at what price.

14

*Id*. at 747, 490 S.E.2d at 836.

In *Kingwood*, the Supreme Court of Appeals of West Virginia made it abundantly clear that "[i]n determining whether [one] had control over [the mining operation], the test to be applied is the actual authority of [that person] over the operations of [the mining company.]" *Id.* at 748, 490 S.E.2d at 837. Here, the Board and the DEP acknowledged that Mr. Nathan did not actually control the mining. However, pursuant to the Asset Purchase Agreement, the Plan Administrator Agreement, and the Contract Operator Agreement, the Board determined that Mr. Nathan did maintain a relationship that gave him actual authority to determine the manner in which the permit holder-operator and its contract operator conducted the operations under the permit. However, the record clearly reflects that the Petitioner does not own any of the minerals Bluestone has mined and sold; nor does the Petitioner own any of the real property upon which Bluestone operates or any of the machinery and equipment associated with the Pinnacle Mine Complex. Accordingly, we conclude Mr. Nathan never possessed actual authority to control the timing, techniques, or location of Bluestone's mining activities while such activities were ongoing. Ultimately, Mr. Nathan's authority as Plan Administrator is limited to winding down the affairs of the reorganized entities.

Nonetheless, the Board found Mr. Nathan in control of the Pinnacle Mining Complex due to his ability to bring a suit against Bluestone to enforce compliance through

15

the Contract Operator Agreement and Asset Purchase Agreement. We disagree. As discussed in *Kingwood*, one's ability to compel action from the operator of the mining complex through arbitration is insufficient to give it actual authority to control the manner in which operations are conducted. In *Kingwood*, the coal reserve owner had certain rights pursuant to its agreements with T&T, those contracts were arms-length agreements that required Kingwood to first go through arbitration to enforce its rights. *See id*. at 752, 490 S.E.2d at 841. Accordingly, Kingwood could not be deemed a controller of T&T.

We find the *Kingwood* authority to be instructive in its application to the matter at hand. Petitioner's ability to petition any court, including the bankruptcy court, for assistance in compelling action is equally insufficient to give actual authority to control operations. Here, in light of Bluestone's failure to abide by requests to comply with its contractual obligations, in stark contrast to a typical contractor honoring its contractual obligations to its principal, Mr. Nathan was forced to resort to judicial relief. This scenario provides evidence suggesting the lack of authority to control. Mr. Nathan needs the involvement of a court or a regulatory authority to coerce compliance from Bluestone. The Board's reliance on Mr. Nathan's ability to use the court system in compelling action was insufficient to give actual authority to control operations. This mistaken reliance, coupled with the Board's failure to appropriately apply the rebuttable presumption as contained in the West Virginia Code of State Rules, require this matter to be vacated and remanded for further proceedings. Accordingly, based solely on the record before us, the Board has not performed a proper analysis under West Virginia Code of State Rules § 38-2-2.83.d and

*Kingwood*. The Board should allow Mr. Nathan the opportunity to demonstrate whether he in fact possesses the authority directly or indirectly to determine the manner in which the relevant surface mining operations were conducted at the Pinnacle Mining Complex.

## Conclusion

For the foregoing reasons, the January 23, 2023, Order of the West Virginia Surface Mine Board is hereby vacated. This case is remanded to the West Virginia Surface Mine Board for an analysis as to whether Mr. Nathan, as bankruptcy Plan Administrator and officer of a permittee, subject to the rebuttable presumption of control, has the authority, directly or indirectly, to determine the manner in which the relevant surface mining operations are conducted.

**Vacated and Remanded with Directions.**